## POOR v. GIBSON & a.

Where land is described in a writ as part of a particular lot, bounded by particular lines and monuments on the ground, the evidence is not to be confined to the particular lot mentioned, but may apply to any part of the land included within those lines and monuments; in other words, if it turns out that the particular lot does not cover the whole land included in the boundaries given, the bounds must govern as the most certain description.

Where the deed under which the plaintiff claimed, described the land in general terms as lot No. 6, without further description, and it was matter of reasonable doubt what was the extent of lot No. 6, and the plaintiff showed an entry under his deed upon what he claimed by definite boundaries as part of lot No. 6 — *held*, that such entry and possession under it were *prima facie* evidence of title to that extent, and entitled him to maintain an action of trespass against any stranger, without title, who had interfered with his possession, whether the land were actually part of lot No. 6 or not.

TRESPASS, for breaking and entering the plaintiff's land in Goffstown, and cutting and carrying away his wood and timber, tried at the October term, 1854.

The land was thus described in the writ: "beginning at the north-east corner of lot No. 6, in the 12th range, which is also the south-west corner of lot No. 5, in the 13th range; thence south $81\frac{1}{4}°$ west, passing on the northerly side of a coal hearth to a bound in the fence; thence north 89° west to the lot line; thence south by said lot line to the south-west of lot No. 6, in the 12th range; thence easterly by the southerly line of said lot, to land which Joshua F. Ayer sold to Abram Collins; thence northerly and easterly by said Collins' land to the easterly line of said lot; thence northerly by said lot line to the bounds first mentioned, and is part of lot No. 6, in the 12th range of lots on the north side of Piscataquog river, in Goffstown."

The case was tried upon the general issue. The plaintiff introduced evidence of title by conveyances from former owners to all the land in lot No. 6, in the 12th range, except the part sold to A. Collins by J. F. Ayer, which was in the south of said lot, and was not in controversy in this case.

One of the principal points in controversy was the position of the original line upon the north side of lot No. 6. The plaintiff

contended, and introduced evidence tending to prove, that the original line of the lot commenced at *the stake and stones* described in his writ as the corner of lot No. 5, in the 13th range, and extended nearly west. The defendants contended, and offered evidence tending to prove, that the original north line of the lot was about 28 rods further south, and extended from a bound called *the Flanders corner*, which is at the westerly end of the course stated in the plaintiff's writ as *north* 89° *west ;* easterly, or nearly east, to the bound called *the Stearns corner*, which is described in the plantiff's writ as *the bound in the fence*, and thence the same course to the east line of the lot.

The plaintiff did not claim to the line which he set up as the north line of the lot, but he claimed to the Flanders and Stearns corners, and from the last of these by a diagonal line north $81\frac{1}{4}°$ east to the stake and stones at the south-west corner of lot No. 5, in the 13th range. The dispute related to the tract between the lines claimed by the parties, said to be about fifteen acres.

It appeared that the plaintiff purchased part of his land in 1816 and part in 1818, entered into possession soon after, and has since occupied it as his homestead farm. In 1818 he cut and hauled away some pine timber which had been blown down in the great gale of 1815, upon that part of the premises claimed by him which is now in dispute, and is next to the line he now claims. He has since from time to time cut wood and hop poles upon this part of the land, and in 1826 he cleared and sowed up to this line, toward the westerly part of the land in dispute, and burned coal upon the premises at the place described in the writ as a coal hearth, cutting wood for it in the vicinity.

The defendants showed a conveyance from Daniel Farmer of part of the land in lot No. 5, which adjoins No. 6 on the north, bounded by the line extending east from the Stearns corner, as claimed by Farmer, and an entry under that deed. They offered no evidence of any conveyance of any part of lot No. 5 to Farmer ; but it appeared that in 1828 he entered upon that lot and cut a large quantity of ship timber upon it, and that some timber was then cut by him upon the disputed land ; that a dis-

agreement then arose between Poor and Farmer as to the line, and surveys were made, to find and settle the line. The evidence tended to show acts of ownership after this by both parties, and subsequent surveys, and each of them contended that by those surveys the line had been settled in his favor, and that the acts of ownership by him show a possession and occupancy by him under a claim of title to the line he claims from his first entry.

The defendants contended that as the plaintiff in his writ claimed the place of the trespass to be on lot No. 6, he could not recover unless he satisfied the jury that the injury was done upon that lot, and that it was immaterial whether the defendants showed any title in their grantor or not; and that as the plaintiff's title was to the lot No. 6 alone, if they entered upon land which afterwards proved to be on the lot No. 5, north of the line of No. 6, claiming them to be on No. 6, that entry and possession gave him no title to recover against a stranger who entered upon the land as part of lot No. 5, without showing any title.

But the court instructed the jury that the whole description in the writ is to be taken together, and when the place of the trespass is described as part of lot No. 6, bounded by particular lines and monuments on the ground, the evidence is not to be confined to lot No. 6, but may apply to any part of the land included within those lines and monuments. In other words, that if it turns out that lot No. 6 does not cover the whole land included in the boundaries given, the bounds govern as the most certain description. And if the deed under which the plaintiff claims describes the land in general terms as lot No. 6, for example, without further description, and it is matter of reasonable doubt what is included in No. 6, and the plaintiff shows an entry under his deed upon what he claims by definite boundaries as lot No. 6, such entry and possession under it is *prima facie* evidence of title to that extent, and entitles him to maintain an action against any stranger without title, who interferes with his possession, whether the land is finally proved to be part of lot No. 6 or not.

Poor *v.* Gibson.

To these instructions the defendants excepted, and the jury having found a verdict for the plaintiff, moved for a new trial on account of them.

*Clarke & Bell*, for the plaintiff.

*D. & D. J. Clark*, for the defendants.

FOWLER, J.* We are called upon to give a construction to the declaration in this case, and we think it must be understood as embracing such a tract of land as will fall within the lines and monuments described, whether it be embraced within the limits of lot No. 6 or not. If so, the plaintiff was certainly at liberty to prove his claim as laid, and that allowed the proof of a trespass upon the territory described by monuments, whether it were part of lot No. 6 or lot No. 5.

It being determined by the verdict that the plaintiff entered upon the land described in the writ as part of lot No. 6, and that he retained, occupied and improved it, supposing it to be part of that lot; claiming it under his deed and possession as part of that lot; we think he has shown a sufficient title against one who has shown no title except by a subsequent possession under claim of title by deed; especially as the case finds it to be even now doubtful whether the land was in lot No. 6 or lot No. 5. All the defendant acquired by his deed was the possession of Farmer, who had previously entered without deed. His deed marked the extent of his claim as derived from Farmer, but gave no further right than Farmer had. The plaintiff had made an earlier entry upon the land, and actually occupied most of it by way of cutting wood and timber, and clearing a portion, and had a deed which he claimed and supposed covered the premises in controversy. His possession, under these circumstances, appears to us clearly sufficient to enable him to maintain this action.

* PERLEY, C. J., and SAWYER, J., did not sit.

It has been repeatedly decided in this State, and may well be considered as fully settled, that prior entry upon and continued acts of ownership exercised over and upon a tract of land, such as the case finds the plaintiff to have made and exercised in respect to the premises described in the writ, are sufficient evidence of title to enable the tenant to maintain an action against one who subsequently enters, but shows no right to enter upon the land. *Woods* v. *Banks,* 14 N. H. 101 ; *Moor* v. *Campbell,* 15 N. H. 208 ; 2 N. H. 456 ; 3 N. H. 26 ; 3 N. H. 50.

In *Tenney* v. *Beard,* 5 N. H. 58, where a question of ·description and boundary, somewhat of the same character as that raised in the present case, was presented for consideration, the court held it to be " a principle sanctioned by common sense and many adjudged cases, that a resort was not to be had to the description of the land as a particular lot, until driven to it by finding the common rules of construction insufficient to enable us to ascertain, by the monuments mentioned in the deed, what was intended to be granted."

Applying .the principle of these cases to the one before us, the instructions of the court below seem to have been entirely correct. The boundaries mentioned in the declaration are clear and definite, the whole description is to be taken together, and the place of trespass being described as part of lot No. 6, bounded by particular lines and monuments on the ground, the evidence might properly apply to any part of the land included in the boundaries, whether on lot No. 6 or not ; and the extent of lot No. 6 being a matter of reasonable doubt, an entry by the plaintiff, under his deed of lot No. 6 only, on what he claimed by clearly defined bounds as part of that lot, and subsequent possession in accordance with that entry, would enable him to maintain an action against any stranger without title who might interfere with his possession, whether the land ultimately proved to be part of lot No. 6 or not.

If the defendant had shown that another person had a better right than the plaintiff to the land in dispute—as that the *locus in quo* was part of a lot to which the plaintiff had no title either by

Poor *v.* Gibson.

deed or adverse possession—it might perhaps have availed him in the reduction of damages, but would have been no bar to the maintenance of this action.

The instructions to the jury being correct, there must be

*Judgment upon the verdict.*